UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERESA L. DENNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:11-cv-01520-MJD-TWP |
| | ) |
| MICHAEL J. ASTRUE Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**Entry on Judicial Review**

Plaintiff Teresa Denney requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") partially denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i); 423(d). The court rules as follows:[1]

## I. Procedural History

Denney filed an application for DIB in December 2008, alleging a disability onset of August 1, 2006. The claim was initially denied on March 12, 2009 and upon reconsideration on May 19, 2009. Denney requested a hearing on June 5, 2009, which took place before Administrative Law Judge Kimberly Cromer on February 16, 2011. On March 25, 2011, the ALJ issued a partially favorable decision finding that Denney was disabled, and thus eligible for DIB, as of October 15, 2010. The Appeals Council denied Denney's request for review of determination of the onset date on October 21, 2011, making the ALJ's decision the final

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 363(c)(3).

decision for purposes of judicial review. Denney filed her Complaint with this Court on November 15, 2011.

## II. Factual Background and Medical History

Denney was fifty-four years old at the time of the ALJ decision and forty-nine on the alleged onset date. At the time of her alleged onset date, Denney performed a job that required her to use power tools. Since the alleged onset date, she attempted to work other jobs. Her last job was at McDonald's in 2008.

The first medical record relating to Denney's alleged onset of disability was on September 20, 2005 at the Henry County Memorial Hospital where she was treated for wrist pain. She was diagnosed with carpal tunnel syndrome and released to go back to work the same day with restrictions.

Denney sought treatment from Dr. Creighton on October 21, 2005 for bilateral hand pain and occasional numbness. Dr. Creighton noted that she had findings consistent with mild osteoarthritis, but tests were negative for carpal tunnel. He recommended that she consider changing her work activity and avoid heavy gripping and grabbing of power tools.

On February 10, 2006, Denney received treatment from Dr. Rolston.[2] She corroborated the findings of Dr. Creighton noting that Denney's X-rays were remarkable for osteoarthritis and there were no signs of carpal tunnel.

Denney saw her primary care physician, Dr. Davisson on February 21, 2006 and also on March 31, 2006. Dr. Davisson diagnosed Denney as having chronic depression with myofascial pain syndrome and nocturnal leg cramping.

---

[2] While not dispositive of the outcome, Denney's brief incorrectly states that on this day Denney saw both Dr. Rolston and Dr. Davisson when, in fact, she only saw Dr. Rolston. Pl. Brief in Supp. Of Complaint at 3-4; R. 263, 279.

On August 16, 2007, Denney went to the Open Door Clinic for treatment and was sent to the Emergency Room of Ball Memorial Hospital. There, she was diagnosed with uncontrolled hypertension and nicotine dependency. She had high blood pressure but had no complaints otherwise. Denney was sent home the same day.

Denney did not return to see Dr. Davisson until November 6, 2008, over two years later. He noted that her hands had osteoarthritic changes, but there was no active synovitis or joint effusions. He diagnosed her as having osteoarthritic pain predominant in her hands, hypertension, and chronic depression.

Dr. Davisson completed a Report of Psychiatric Status on January 12, 2009, which diagnosed Denney as having chronic depression with fibromyalgia superimposed. In this report, Dr. Davisson gave his opinion as to Denney's onset disability date as November 6, 2008. Dr. Davisson also reported that Denney's ability to attend to a simple work routine on a consistent basis was limited by pain and stress and by poor concentration. The report also stated that Denney had an alert logical thought process, the ability to recall recent and remote information with no apparent problems, and the ability to drive herself to all appointments.

On October 15, 2010, Denney was hospitalized on emergency detention at Ball Memorial for a period of four days for acute intervention and stabilization due to significant depression and suicidal ideation. She was diagnosed with moderate to severe major depressive disorder, fibromyalgia, hypertension, and had a GAF score of 20. It was this date that the ALJ determined to be Denney's onset date.

### III. Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in

writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion. *Dixon*, 270 F.3d at 1176.

### IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Denney had not engaged in substantial gainful activity since the alleged onset date of her disability. At step two, the ALJ found that, since her alleged onset date, Denney had the following severe impairments: fibromyalgia, osteoarthritis in both hands, mild obesity, and major depression.

At step three, the ALJ determined that, prior to October 15, 2010, Denney did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The ALJ determined that Denney's osteoarthritis did not meet or medically equal the criteria of 1.02B of the Listing of Impairments as there was no clinical finding that Denney was unable to use her hands. Fibromyalgia was not a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1; however, the ALJ did consider it in relation to the listings and determined that there was no evidence of an inability for Denney to ambulate effectively or an inability in both upper extremities to perform fine and gross movements effectively. The ALJ found that Denney's hypertension and complaints of chest pain did not meet or medically equal the criteria of 4.02 of the Listing of Impairments as there was no objective evidence of systolic or diastolic

failure. Based on the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 C.F.R., Part 404, Subpart P, Appendix 1, the ALJ determined that Denney had the following degrees of limitation in functioning prior to October 15, 2010: mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Finally, the ALJ determined that, prior to October 15, 2010, Denney's mental impairment(s) did not satisfy "paragraph C" criteria of the mental disorder listings as there was no evidence of decompensation, no evidence that a minimal increase in mental demands or change in environment would lead to decompensation, and no evidence that Denney was unable to function outside of a highly supportive living environment.

The ALJ determined that, beginning on October 15, 2010, the severity of Denney's impairment met the criteria of section 12.04 of 20 CFR Part 404, Subpart P, Appendix 1. The ALJ found that the "paragraph A" criteria was satisfied because Denney had hallucinations, suicidal thoughts, decreased energy, helplessness, hopelessness, and decreased concentration. The ALJ determined that the "paragraph B" criteria was also satisfied because Denney's impairment had caused moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and one to two episodes of decompensation, each of extended duration. Thus, the ALJ determined that Denney was disabled beginning October 15, 2010.

The ALJ found that, prior to October 15, 2010, Denney had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with no climbing of ladders, ropes or scaffolds; frequent climbing of ramps and stairs; occasional stooping, balancing, kneeling, crouching, and crawling; frequent handling and fingering; avoiding

6

concentrated exposure to vibration; involving simple routine repetitive tasks; in a low stress environment, meaning occasional decision making or changes in the work setting; no interaction with the public; and occasional interaction with co-workers and supervisors. The ALJ found that Denney's impairments could reasonably be expected to cause the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible prior to October 15, 2010 to the extent that they were inconsistent with the RFC assessment.

At step four, the ALJ determined that Denney had no past relevant work. At step five, the ALJ determined that, considering Denney's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Denney could have performed prior to October 15, 2010. Thus, the ALJ determined that Denney was not disabled prior to October 15, 2010 under the Act for purposes of DIB, but that Denney became disabled on that date and has continued to be disabled through the date of the ALJ's decision.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's finding that Denney was not disabled prior to October 15, 2010. Denney raises three arguments as to why this Court should reverse the decision of the ALJ: 1) the determination of the onset date is contrary to Social Security Ruling ("SSR") 83-20; 2) the determination of credibility is contrary to SSR 96-7p; and 3) there is no substantial evidence to support the ALJ's step five determination that Denney could perform some jobs prior to October 15, 2010.

### A. Substantial evidence supports the ALJ's determination of the onset date as defined under SSR 83-20.

"The onset date of disability is the first day an individual is disabled as defined in the Act and regulations." SSR 83-20. Its determination is dependent upon the applicant's allegations,

work history, and medical evidence. *Id*. When determining a claimant's onset date, the date alleged by the claimant "should be used if it is consistent with all the evidence available." *Id.* However, the medical evidence serves as the primary element in determining onset and the applicant's allegation is significant "only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id.* "When the medical or work evidence is not consistent with the allegation, then additional development may be needed to reconcile the discrepancy. However the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Id.*

Denney argues that the ALJ erroneously rejected her alleged onset date of August 1, 2006, alleging that the date is "corroborated by Dr. Davisson her treating physician." Pl. Brief in Supp. of Complaint ("Pl.'s Brief") at 11. This is one of several mischaracterizations of the record cited by Denney. Although Dr. Davisson treated Denney on the alleged onset date, it was Dr. Davisson's opinion that if Denney was determined to be disabled under the Act, she was disabled as of November 6, 2008. R. 305.

Denney does not contest the ALJ's determination of work history.

Denney does, however, take issue with the ALJ's evaluation of the medical evidence. She argues that the ALJ either selectively considered or completely ignored certain medical evidence provided in the record. As noted above, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson*, 999 F.2d at 181. However, the Court will address Denney's concerns.

Denney argues that the ALJ selectively considered the September 20, 2005 visit to the Henry County Hospital emergency room, arguing that the ALJ improperly determined that Denney did not have carpal tunnel syndrome. Although Denney was diagnosed with carpal

8

tunnel syndrome at the hospital emergency room, this is the only diagnosis in the record to suggest that Denney had carpal tunnel syndrome. In fact, Dr. Creighton and Dr. Ralston both treated Denney and both specifically determined that she did not have carpal tunnel syndrome. Dr. Davisson, her primary care physician does not make such a finding in any of the medical records. Therefore, the ALJ's determination was not erroneous as to this matter.

Next, Denney argues that the ALJ ignored the treatments from Dr. Creighton and Dr. Rolston on October 21, 2005 and February 10, 2006, respectively. As noted above, the ALJ does not need to evaluate in writing every piece of medical evidence. Even considering these visits, the mere fact that Dr. Creighton had recommended that Denney consider changing her work activity and avoid heavy gripping and grabbing of power tools, does not, as Denney suggests, constitute medical evidence of the onset of her disability. The fact that Denney should not use power tools does not prevent her from performing other jobs.

Denney also argues that the ALJ selectively considered the February 21, 2006 and March 31, 2006 visits and ignored her increased pain and chronic depression. Although the record does note an increase in pain and a change in her depression medication that could, as Denney suggests, indicate a worsening of her mental problems, the March 31 visit states an improvement from the February 21 visit. Therefore, there was no error, as there was sufficient basis in the record for the ALJ to conclude that Denney's pain and depression were controllable and not disabling at that time.

Denney next argues that the ALJ ignored the August 16, 2007 emergency room treatment at Ball Memorial Hospital stating that "her multiple impairments had caused her to lose her job, lose her house, and render her homeless and unable to purchase her medications." Pl.'s Brief at 14. The records indicate that Denney was treated for uncontrolled hypertension and that her

9

stress was a result (not the cause) of the loss of her job/home. R. 417. The records also indicate that Denney had no complaints about any other impairment during this visit. *Id.* Even though the ALJ did not specifically refer to this hospital visit, she does discuss Denney's hypertension in her step two analysis. R. 15. Relying on the medical expert's testimony that Denney's hypertension appears to be under control with medication and does not result in any work-related limitations, the ALJ determined that the hypertension was not a severe impairment. Since the ALJ is not required to reduce to writing all medical evidence and she formed a logical bridge to her conclusion regarding the hypertension, there was no error.

Next, Denney argues that the ALJ selectively considered the November 6, 2008 treatment by Dr. Davisson. Specifically, Denney argues that the ALJ only considered the visit in relation to the fact that it had been two and a half years since her last visit. The ALJ stated that "the fact that the claimant had not seen her primary care physician for such an extended period of time belies her complaints that her arthritis in her hands was severe enough to preclude work activity." R. 17. Denney argues that this reasoning is contrary to SSR 96-7p. The Court agrees. SSR 96-7p provides that an individual's statements can be less credible if the frequency of the treatment is not consistent with the severity of the complaints. SSR 96-7p. However, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id*. SSR 96-7p requires the ALJ to inquire as to the reason for the infrequency such as "the individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id*. Indeed, Denney's financial hardship and the fact that she was homeless for a period of time is

noted throughout the record. R. 313, 417, 493. It was improper for the ALJ to make this assertion without inquiring as to the reasoning behind Denney's lack of treatment. However, the Court finds, that even if this language were removed from the ALJ's opinion, there is still substantial evidence to support a determination of the onset date to be October 15, 2010.

Denney also argues that the ALJ selectively considered Dr. Davisson's Report of Psychiatric Status and ignored his opinion that the disability began November 6, 2008. This report was compiled on January 12, 2009. R. 305-12. The ALJ gave her reasoning for affording less weight to Dr. Davisson's report indicating that the report was ultimately contradictory. She states that "although [Dr. Davisson] opined that the claimant's ability to do simple work was limited by pain and stress, as well as poor concentration, the remainder of the form does not support such extreme limitation." R. 18. The ALJ referenced Dr. Davisson's report which noted that Denney was alert with logical thought process, able to drive herself to all appointments, and able to recall recent and remote information with no apparent problems. The ALJ built an accurate logical bridge from the evidence to her conclusion and, therefore, there was no error.

Denney also argues generally that the ALJ ignored her treatments by Dr. Davisson on January 6, 2009 and January 12, 2009. The January 12, 2009 record to which Denney refers was merely a recitation of the Report of Psychiatric Status, discussed above, which was compiled on January 12, 2009. R. 310, 327. Specifically, this record states "[f]illed out psychiatric based disability papers for the patient's current issues being inability to focus due to the depression and the stress accompanying these issues. All compounded by the fibromyalgia pain. The form was filled out and submitted." R. 327. As discussed above, the ALJ did not afford much weight to the Report of Psychiatric Status as she found it conflicting. Therefore, there was no error as to the January 12, 2009 treatment.

11

In relation to the January 6, 2009 treatment, Denney argues that "[t]he ALJ ignored the 1-6-09 primary care treatment by Dr. Davisson MD (R. 271), although it reported that she was continuing to have severe problems with her pain and 'nerves.' He increased the dosage of Celexa and added Ultram for the pain." Pl's Brief at 16. This is the entire argument for the January 6, 2009 treatment. Although Dr. Davisson did increase the dosage for Celexa and added Ultram, the record for which Denney cites does not characterize Denney's problems with pain and nerves as "severe." The record states "[patient] wants to know what she is to do to manage her pain/nerves." R. 271. The Court again notes that the ALJ need not examine in writing every piece of medical evidence. The burden is on Denney to prove the existence of a disabling impairment. *See* 20 C.F.R. 404.1512(c) (explaining that the claimant must provide medical evidence showing that she has an impairment(s), how severe it is during the time the claimant says that she is disabled, and also provide evidence on how the impairment(s) affects the claimant's functioning during the time of alleged disability). The January 6 treatment does not prove the existence of a disabling event. Denney merely uses this evidence as supporting evidence and it is not independently disabling. Denney argues that the records show that she continued to have "*severe* problems with her pain and nerves," yet the records neither reflected the severity of the pain nor how it affected her functioning. Because Denney failed to show that the problems with "pain and nerves" on January 6, 2009 were either severe or disabling, there was no error.

The ALJ clearly articulated why she used October 15, 2010 as the onset date. The ALJ found that it was at this date that Denney met the criteria of section 12.04 satisfying "paragraph A" and "paragraph B." Because the ALJ articulated her analysis in her decision, providing a

12

glimpse into her reasoning, and built an accurate logical bridge from the evidence to her conclusion, there was no error.

### B.     The ALJ's determination of credibility is not contrary to SSR 96-7p.

The ALJ correctly stated her duties for evaluating symptoms when determining credibility under SSR 96-7p. In short, SSR 96-7p requires that the ALJ must first "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. Once that impairment has been established, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's ability to do basic work activities." SSR 96-7p. Ultimately, the ALJ must make a finding of credibility on the individual's statements based on consideration of the entire case record.

After considering the case record, the ALJ found that Denney's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible prior to October 15, 2010, to the extent that they are inconsistent with the residual functional capacity assessment."  R. 16-17. The ALJ noted that in evaluating the entire case record, Denney's statements regarding her symptoms prior to October 15, 2010 were not credible as they were inconsistent with the objective medical evidence outlined above.

Denney specifically objects to the ALJ's failure to mention one or more of the seven factors listed under SSR 96-7p. This rule only requires that the ALJ consider these factors when additional information is needed to assess the credibility of the individual's statements about symptoms and their effects. SSR 96-7p. Based on the entire case record, there was no need for the ALJ to seek additional information and thus she did not have to engage in the seven factor analysis.

13

**C.    There is substantial evidence to support the ALJ's step five determination that Denney could perform some jobs prior to October 15, 2010.**

The ALJ relied on a vocational expert to make her determination that Denney could perform some jobs prior to October 15, 2010. She asked the vocational expert whether jobs existed in the national economy for an individual with Denney's age, education, work experience, and the ALJ's finding of RFC. The expert testified that, given all of these factors, there were jobs that Denney could have performed in representative occupations such as mail clerk or hand packager.

Denney challenges specifically the finding of RFC by the ALJ, arguing that the RFC ignores the determinations of Denney's treating physician Dr. Davisson. As explained above, the ALJ gave her reasoning for not affording much weight to Dr. Davisson's opinion given the entire record. Therefore, there is substantial evidence to support the ALJ's finding of RFC and the determination that Denney could perform some jobs prior to October 15, 2010.

## VI.    Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

Date:   12/17/2012

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov